**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   **NO. CR 06-1077 RB** |
| | ) |
| **ELOY GONZALEZ,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** came before the Court on Defendant's (Gonzalez's) Motion to Suppress Evidence (Doc. 38), filed on June 28, 2006. On August 22, 2006, I held a hearing, received evidence, and heard arguments. Being otherwise fully advised, I deny the motion.

**I. Facts.**

In the early morning hours of February 3, 2006, United States Border Patrol Agent Sergio Segovia and United States Border Patrol Trainee Joshua Stokes were on roving patrol in the remote bootheel section of southwestern New Mexico. Segovia and Stokes were in full uniform in a marked Border Patrol vehicle. They were assigned to the "graveyard" shift, which runs from 11:00 p.m. until about 9:00 a.m. At their pre-shift briefing at the Lordsburg Border Patrol station, the agents were advised to be on the lookout for two vehicles picking up a load of marijuana on Highway 338.

At about 4:10 a.m., Agent Segovia parked near the intersection of New Mexico Highway 338 and Highway 145, north of Cotton City, New Mexico. Highway 338 is a two-lane road running north/south from the international border area through Animas, New Mexico to Interstate 10, about 11 miles west of Lordsburg, New Mexico. (Gov. Ex. 1.) Highway 338 is a dirt road from the border

area to a point a few miles south of Animas and paved from that point northward. Highway 145, also known as "Goat Camp Road," runs east/west for a distance of about five miles, and connects Highway 338 with Highway 80. (Gov. Ex. 1.) Highway 80 is a two-lane road running north/south from the international border area near Douglas, Arizona, crossing into New Mexico just south of Rodeo, New Mexico, and connecting with Interstate 10 at Roadforks, New Mexico, about 16 miles west of Lordsburg. (*Id.*)

The intersection of Highways 338 and 145 is approximately 60 miles from the international border with the Republic of Mexico, and about 30 miles from the New Mexico/Arizona state line. Highways 338, 145, and 80 are known drug-smuggling routes.

Agent Segovia has been employed by the Border Patrol for approximately four and one-half years. For the last three years, Agent Segovia has patrolled the area in question on a regular basis and become acquainted with the locale. The area is sparsely populated, predominantly by cattle ranchers. The traffic varies depending on the hour of the day; however, in the early morning hours, traffic is rare except for local traffic. During the time that Agent Segovia has patrolled the area, he has been involved in apprehending narcotics and alien smuggling loads.

From Agent Segovia's vantage point near the intersection of Highway 338 and 145, he observed two vehicles traveling south on Highway 80. Due to the flat terrain and clear weather, the agent was able to see the headlights of the two vehicles on Highway 80. The vehicles turned east on Highway 145, then south on Highway 338. Agent Segovia was parked on the east side of Highway 338, facing west, with his headlights on.

As the vehicles passed about 15 to 20 feet in front of Agent Segovia's location, he observed that the first vehicle was a gray Lincoln pickup truck ("Lincoln"). A Lincoln pickup truck is not the

type of truck ordinarily used by area ranchers because it is considered more of a luxury vehicle than a work truck. Segovia did not recognize the Lincoln as a local vehicle. The second vehicle, which was following about two car-lengths behind the pickup truck, was a gold hatchback sport utility vehicle ("SUV").

The agent observed no passengers in either vehicle and neither driver acknowledged Agent Segovia's presence. The driver of the Lincoln had a military haircut and wore a baseball cap. Although both drivers likely saw the marked Border Patrol vehicle, the drivers stared straight ahead and did not look at Segovia and Stokes. The vehicles appeared to be traveling in tandem in that they traveled close together, both had Arizona license plates, and both vehicles traveled south on Highway 80, east on Highway 145, and turned south on Highway 338.

After the vehicles turned south on Highway 338, Agent Segovia believed that the drivers of the two suspicious vehicles saw Segovia and Stokes and the marked Border Patrol vehicle with the headlights on. Segovia decided to drive west on Highway 145 and park near the intersection of Highway 145 and 80, in hopes of encountering the two vehicles on their way north. Segovia called Agent Jackson Lara, who was on roving patrol on Interstate 10, informed Lara of the situation, and asked Lara to meet him at the intersection of Highways 80 and 145. Agent Segovia waited several minutes to make sure that the two vehicles were out of sight before he and Stokes proceeded west on Highway 145.

Agent Lara has six years of experience as a Border Patrol agent in the area. Lara had been in contact with Segovia throughout the shift. In response to Segovia's request, Lara exited Interstate 10 in his marked Border Patrol vehicle, drove south on Highway 80, and turned east on Highway 145. Lara encountered Segovia and Stokes while the latter were still driving west on Highway 145.

3

The agents stopped, rolled down their windows, and Segovia described the vehicles, drivers, and route to Lara. The agents then parked their vehicles at the intersection of Highway 145 and Highway 80, facing west. Lara radioed Agent Grenci, another Border Patrol agent on roving patrol on Interstate 10, and asked Grenci to watch the intersection of Highway 338 and Interstate 10 in case the two vehicles went that way.

At approximately 5:50 a.m., Agent Segovia noticed a set of headlights traveling northbound on Highway 80. It was still dark and the headlights were on all vehicles involved. The agent was able to see the approaching headlights from a distance of about 30 yards due to hills and blind spots on Highway 80 to the south of Highway 145. As the vehicle passed Agent Segovia's location, Segovia noticed that the vehicle was the Lincoln that he saw earlier traveling south on New Mexico Highway 338.

Agent Segovia followed the Lincoln for about five miles or about ten minutes. The agent requested a vehicle registration check, a stolen vehicle check, and a 72-hour lane check.[1] The registration check showed the vehicle registered to "P.V. Holding Corporation" of Phoenix, Arizona. In the agent's experience, vehicles registered to a "holding corporation" are typically rental vehicles. Agent Segovia has apprehended illegal alien and narcotics loads smuggled in rental vehicles. The other checks on the vehicle were negative. Based on all of the facts and circumstances that Agent Segovia observed, he decided to stop the Lincoln to conduct an immigration inspection. Segovia pulled the Lincoln over.

Several minutes after Agent Segovia left to follow the Lincoln, Agent Lara observed the SUV

---

[1] Determines whether a vehicle crossed the international border at a port of entry within the prior 72 hours.

traveling north on Highway 80. When Lara observed the SUV pass his location, Lara noticed that the SUV carried three people, although Agent Segovia had earlier observed only the driver.

Agent Lara followed the SUV and requested a registration check, stolen vehicle check, and a 72-hour lane check. The registration check showed that the SUV was registered to "P.V. Holding Corporation," which was the same registration as the Lincoln. The other checks were negative. Lara knew that the Lincoln came back with the same registration because he listened to the radio transmissions of Segovia.

As Agent Lara followed the SUV, the SUV accelerated and traveled at 90 miles per hour. The speed limit was 60 miles per hour. Agent Lara engaged his emergency equipment and the SUV immediately pulled over. As the SUV stopped, the occupants of the SUV jumped out and began to flee.

Agent Lara chased the fleeing suspects and requested assistance from other agents. After other agents arrived, Agent Lara returned to the SUV, which the occupants had left running with the doors open. Inside the SUV, Agent Lara noticed a blanket covering square bundles. Agent Lara, a certified canine handler, brought his trained drug-detection dog to the SUV and the dog alerted on the rear hatchback and passenger rear door of the SUV. Agent Lara searched the SUV and discovered 13 bundles containing a substance that field-tested positive for marijuana. The gross weight of the marijuana was approximately 275 pounds, or 125 kilograms.

Agents contacted Budget Rental agency and discovered that the Lincoln was rented by a person named Nestor Gonzalez of Mesa, Arizona. The SUV was rented by Eloy Gonzalez.

Gonzalez and three individuals who fled from the SUV were placed under arrest.

Gonzalez argues that the stop of the Lincoln was not justified by reasonable suspicion. The

Government responds that the motion to suppress should be denied as untimely[2], and there was reasonable suspicion to stop the Lincoln and the SUV.

**II. Discussion.**

The Fourth Amendment prohibits unreasonable searches and seizures by the Government. U.S. CONST. amend. IV.  Its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest.  *United States v. Arvizu*, 534 U.S. 266, 273 (2002).  "The Fourth Amendment requires a finding that criminal activity may be afoot in order to conduct roving patrol stops."  *United States v. Gandara-Salinas*, 327 F.3d 1127, 1129 (10th Cir.2003).

The following factors are relevant to the determination of whether an immigration stop is supported by reasonable suspicion:

> (1) characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the previous experience of the agent with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior, including any obvious attempts to evade officers; (7) aspects of the vehicle, such as a station wagon with concealed compartments; and (8) the appearance that the vehicle is heavily loaded.

*Gandara-Salinas*, 327 F.3d at 1129-30 (*citing United States v. Monsivais*, 907 F.2d 987, 989-90 (1990) and *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975)).

In evaluating these factors, a court may not employ a "divide-and-conquer" approach by evaluating and rejecting each factor in isolation. *Arvizu*, 534 U.S. at 277.  The ultimate determination of reasonable suspicion depends upon the totality of the circumstances. *Gandara-Salinas*, 327 F.3d

---

[2]The motion was filed on June 28, 2006, one week after the motion deadline of June 21, 2006.  There is no indication that the Government was prejudiced.  Indeed, the Government's response was filed on July 19, 2006, one week after it was due on July 12, 2006.  The law favors consideration of cases on the merits.  The motion will not be summarily denied as untimely.

at 1130.  A border patrol officer may use his experience and training in detecting illegal entry and smuggling when assessing these factors.  *Gandara-Salinas*, 327 F.3d at 1129.  A court must defer to the officer's ability to distinguish between innocent and suspicious actions.  *United States v. De la Cruz-Tapia*, 162 F.3d 1275, 1277-78 (10th Cir.1998).

Highways 338 and 80 run north/south from the international border area.  The points where the vehicles were encountered lie 60 miles from the international border.  The area is extremely remote and the usual pattern of traffic at that time is limited to local ranchers.  Agents Segovia and Lara have considerable experience with alien traffic on the highways in question.

The agents did not recognize the Lincoln and the SUV as local traffic.  The agents were advised to be on the lookout for two vehicles picking up a load of marijuana on Highway 338.  The Lincoln and the SUV were obviously traveling in tandem toward the border area on Highway 338.  The drivers did not make eye contact with Segovia, even though they saw him parked in the marked Border Patrol vehicle with headlights on.  The vehicles came back north on Highway 80, rather than Highway 338, in order to evade the Border Patrol.  The approximately two-hour time period elapsed between the first sighting and the second sighting was consistent with a round trip down to the border area and back.  The Lincoln and the SUV were large vehicles capable of transporting loads of drugs or aliens. Both vehicles were registered to the same rental agency.

Gonzalez invites the Court to evaluate and reject each factor in isolation; an approach rejected by *Arvizu*.  Based on the totality of the circumstances, the roving patrol stops were supported by reasonable suspicion.

### III.  Conclusion.

The actions of the Border Patrol agents did not violate the Fourth Amendment.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Suppress Evidence (Doc. 38), filed on June 28, 2006, is **DENIED**.

*Robert Brack*

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**